STATE OF NORTH CAROLINA v. TIMOTHY RYAN POOLE

No. COA01-1482

(Filed 3 December 2002)

**1. Robbery— variance with proof not fatal—attempted armed robbery—type of property**

There was not a fatal variance between the indictment and the proof in an attempted armed robbery prosecution where the indictment alleged that defendant attempted to take currency from the victim, but the evidence was that defendant pointed a gun at the victim and said "give it up" without being specific. The gravamen of the offense is an attempted taking by force or by fear.

**2. Appeal and Error— preservation of issues—right to argue plain error—failure to object when given opportunity**

A defendant in an armed robbery prosecution waived his right to argue plain error in the jury's use of a dictionary in its deliberations where defendant declined to object when given the opportunity by the trial judge.

**3. Robbery— armed—dangerous weapon—handgun presumed dangerous**

The State's failure to produce the weapon used in an attempted armed robbery or to specify the model type of handgun used to threaten the victim did not require an instruction on common law robbery. The law presumes that a firearm used in a robbery threatens the life of the victim, and there was no evidence in this case to contradict that presumption.

**4. Robbery— armed—felonious intent—ambiguous statement**

There was sufficient evidence of felonious intent to support an attempted armed robbery charge where defendant contended that his statement that the victim should "give it up" indicated merely that he wanted the return of a necklace stolen from him,

but the victim understood the statement to mean that defendant intended to rob him, and even defendant testified that the phrase was subject to misinterpretation.

### 5. Robbery— felonious intent—instruction

The instruction on felonious intent in an armed robbery prosecution was adequate.

Appeal by defendant from judgment entered 12 July 2001 by Judge L. Oliver Noble in Mecklenburg County Superior Court. Heard in the Court of Appeals 12 September 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Fred Lamar, for the State.*

*Maitri "Mike" Klinkosum for defendant appellant.*

TIMMONS-GOODSON, Judge.

Timothy Ryan Poole ("defendant") appeals from the judgment of the trial court entered upon a jury verdict finding him guilty of attempted robbery with a firearm. For the reasons stated herein, we find no error by the trial court.

At trial, the State presented evidence tending to show the following: In the early evening hours of 14 May 2000, Shareef Rasool Ivey ("Shareef") and his sister, Nena Malikah Ivey ("Nena"), were driving in Hornet's Nest Park ("the park") in Charlotte, North Carolina. Nena drove the vehicle and Shareef sat in the front passenger-side seat. A female friend of Nena sat in the back seat. Shareef testified that they were "cruising," by slowly circling the parking lot of the park.

After they had been at the park for approximately twenty minutes, Shareef observed defendant driving a gold-colored Cadillac Sedan Deville. Shareef was acquainted with defendant, and the two men nodded their heads at one another as they passed. Shortly afterward, Shareef noticed that the Cadillac appeared to be following their automobile. Shareef instructed his sister to stop, and Nena parked the car in a parking space. Defendant parked near them, and defendant and two other men exited the vehicle.

Defendant approached the passenger-side window and spoke briefly with Shareef. Defendant gave Shareef his telephone number, and Shareef entered this number into the data bank of his cellular telephone. As Shareef was programming his telephone, defendant

"reached into his pants to grab [a] pistol." Defendant pointed the gun at Shareef and told him "to give it up." Shareef testified that he understood defendant's statement to mean that defendant intended to rob him. Nena and her friend began screaming, and Shareef "grabbed the gun" by its barrel. Nena then began backing the car out of the parking space, causing Shareef to loosen his grip on the weapon, which defendant still held by its handle. Shareef released the pistol, and Nena drove them away from the parking lot and toward the park exit, where they were stopped by Charlotte-Mecklenburg police officers. Shareef and Nena reported defendant's actions to the officers, who then located defendant and took him into custody. Shareef and Nena identified defendant as the man who had attempted to rob them.

Officer M. L. Temple of the Charlotte-Mecklenburg Police Department testified for the State. Officer Temple stated that, after Shareef and Nena identified defendant, he arrested defendant and searched his vehicle. Upon searching the vehicle, Officer Temple found a holster to a handgun, ten live rounds of ammunition, and a magazine for a weapon.

Defendant testified that Shareef was one of three men who had robbed him at a McDonald's restaurant several months prior to the incident at the park. Defendant never reported this crime to law enforcement, however. Defendant stated that when he approached Shareef at the park, he intended to question him regarding the robbery at McDonald's. When defendant spoke with Shareef, he noticed that Shareef was wearing a necklace that defendant asserted belonged to him and had been stolen during the earlier robbery. Defendant stated that when he observed the necklace, "my first reaction was to try to get it back. So I pulled my gun out and pointed it at [Shareef], and I told him something like, 'You know what time it is,' or something like that." Defendant testified that he did not intend to harm Shareef or anyone else, but that he "just wanted to get [his] stuff back, that's it."

At the close of the evidence, the jury found defendant guilty of attempted robbery with a firearm. The trial court sentenced defendant to a minimum term of imprisonment of fifty-one months and a maximum term of seventy-one months. From this judgment, defendant appeals.

Defendant presents five assignments of error on appeal, arguing that the trial court erred in (1) that there was a fatal variance between the indictment and the evidence presented at trial; (2) allowing the

jury to use a dictionary during deliberations; (3) failing to instruct the jury on common law robbery; (4) denying defendant's motion to dismiss; and (5) failing to instruct the jury on felonious intent. We address these issues in turn.

**[1]** By his first assignment of error, defendant asserts that there was a fatal variance between the indictment and the evidence presented at trial. Specifically, defendant argues that there was no evidence that defendant attempted to take United States currency from the victim, as alleged in the indictment. Defendant contends that, because the State failed to identify at trial the type of property defendant intended to take from the victim, the indictment contained a fatal variance, requiring dismissal of the charge against defendant. We disagree.

In order to properly obtain jurisdiction over a criminal defendant charged with a felony, a valid bill of indictment is necessary. *See State v. Snyder*, 343 N.C. 61, 65, 468 S.E.2d 221, 224 (1996). In charging a criminal offense, an indictment must state the elements of the offense with sufficient detail to put the defendant on notice as to the nature of the crime charged and to bar subsequent prosecution for the same offense in violation of the prohibitions against double jeopardy. *See State v. Burroughs*, 147 N.C. App. 693, 695-96, 556 S.E.2d 339, 342 (2001). The gravamen of the offense of armed robbery is the endangering or threatening of human life by the use or threatened use of firearms or other dangerous weapons in the perpetration of or even in the attempt to perpetrate the crime of robbery. *See* N.C. Gen. Stat. § 14-87(a) (2001); *State v. Beaty*, 306 N.C. 491, 499, 293 S.E.2d 760, 764 (1982), *overruled on other grounds*, 322 N.C. 518, 369 S.E.2d 819 (1988). " 'In an indictment for robbery with firearms or other dangerous weapons . . . the gist of the offense is not the taking of personal property, but a taking or attempted taking by force or putting in fear by the use of firearms or other dangerous weapon.' " *State v. Mahaley*, 122 N.C. App. 490, 492, 470 S.E.2d 549, 551 (1996) (quoting *State v. Harris*, 8 N.C. App. 653, 656, 175 S.E.2d 334, 336 (1970)).

In the instant case, the indictment alleged that

on or about the 14th day of May, 2000, in Mecklenburg County, Timothy Ryan Poole did unlawfully, wilfully and feloniously attempt to steal, take, and carry away another's personal property, United States currency, of value, from the person and presence of Shareef Rasool Ivey. The defendant committed this act by means of an assault consisting of having in his possession and threatening the use of a firearm, a gun, a dangerous weapon,

whereby the life of Shareef Rasool Ivey was threatened and endangered.

At trial, the State presented evidence tending to show that on 14 May 2000, defendant approached Shareef Ivey, pointed a gun at his person, and demanded that he "give it up." Although the State presented no specific evidence to identify what type of property defendant meant by the word "it," thereby presenting some variance between the indictment and the evidence, not every variance is sufficient to require the allowance of a motion to dismiss. *See State v. Rawls*, 70 N.C. App. 230, 232, 319 S.E.2d 622, 624 (1984), *cert. denied*, 317 N.C. 713, 347 S.E.2d 451 (1986); *State v. Tyndall*, 55 N.C. App. 57, 61, 284 S.E.2d 575, 577 (1981). It is only "where the evidence tends to show the commission of an offense not charged in the indictment [that] there is a fatal variance between the allegations and the proof requiring dismissal." *State v. Williams*, 303 N.C. 507, 510, 279 S.E.2d 592, 594 (1981). There was substantial evidence in the instant case that defendant used a firearm against Shareef Ivey in an attempt to take his property. "As previously discussed, the gravamen of the offense charged here is the taking by force or putting in fear, while the specific owner or the exact property taken or attempted to be taken is mere surplusage." *Burroughs*, 147 N.C. App. at 697, 556 S.E.2d at 342. Because there was no fatal variance between the indictment and the evidence presented at trial, we overrule this assignment of error.

[2] Defendant next argues that the trial court erred in allowing the jury to use a dictionary in order to assist it in the deliberations. During its deliberations, the jury requested that the court define the word "calculation." The trial court instructed the jury that the word "calculation" had no precise legal definition, and read to the jury from a dictionary the various meanings of the term "calculate." The jury then requested use of the dictionary, which the court granted. When the trial judge asked the counsel for defendant whether there were any objections to the jury's use of the dictionary, defense counsel stated no objections. Defendant now contends that the trial court committed plain error in allowing the jury to use the dictionary during its deliberations. As defendant assented to allowing the jury to use the dictionary during its deliberations, however, defendant has waived his right to make such an argument on appeal. *See State v. Jones*, 339 N.C. 114, 163, 451 S.E.2d 826, 853 (1994), *cert. denied*, 515 U.S. 1169, 132 L. Ed. 2d 873 (1995). We therefore overrule this assignment of error.

**[3]** By his third assignment of error, defendant argues that the trial court committed plain error by failing to instruct the jury on the lesser included offense of common law robbery. Defendant contends that, because the State neither identified with specificity the model type of the handgun used to threaten the victim in the instant case, nor produced the weapon itself, there was insufficient evidence that the firearm was one of a dangerous nature. We disagree.

"When a person commits a robbery by the use or threatened use of an implement which appears to be a firearm or other dangerous weapon, *the law presumes*, in the absence of any evidence to the contrary, that the instrument is what his conduct represents it to be—an implement endangering or threatening the life of the person being robbed." *State v. Joyner*, 312 N.C. 779, 782, 324 S.E.2d 841, 844 (1985). When any evidence is presented showing the weapon is not operational and does not pose a danger, however, the mandatory presumption disappears and the jury is permitted, but is not required, to infer that the life of the victim was endangered or threatened by the apparent weapon. *See State v. Duncan*, 136 N.C. App. 515, 519, 524 S.E.2d 808, 811 (2000). In the instant case, Shareef testified at trial that defendant pulled out a "black handgun," which, according to Shareef, "might have been a Glock, because it was small." There was absolutely no evidence presented to contradict the legal presumption that the handgun defendant used was a dangerous weapon. As there was no evidence to support an instruction for common law robbery, the trial court committed no error in failing to give such an instruction. We overrule this assignment of error.

**[4]** Defendant next argues that the trial court erred in denying his motion to dismiss the charge against him. "In ruling upon a motion to dismiss, the trial court must examine the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences which may be drawn from the evidence." *State v. Hairston*, 137 N.C. App. 352, 354, 528 S.E.2d 29, 30 (2000). "When a defendant moves for dismissal, the trial court is to determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* If there is substantial evidence of each element of the charged offense and of the defendant being the perpetrator of the offense, the case is for the

jury and the motion to dismiss should therefore be denied. *See State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988).

Defendant contends that there was insufficient evidence of felonious intent to support the armed robbery charge. Defendant asserts that the evidence tended to show that he did not intend to rob the victim, but rather that he sought to reclaim his property, namely, the necklace taken from him during the McDonald's robbery. Defendant contends that his statement to Shareef that "you know what time it is" or that he should "give it up" indicated that he merely wanted the necklace and no other property. We disagree.

The State presented sufficient evidence at trial to support a reasonable inference that defendant intended to rob the victim. *See State v. Larrimore*, 340 N.C. 119, 156, 456 S.E.2d 789, 809 (1995). Shareef testified that when defendant pointed the gun at him and told him to "give it up," he understood defendant's statement to mean that defendant intended to rob him. Defendant asserted at trial that he subjectively intended the phrase to mean that Shareef should return the necklace he allegedly stole. Defendant admitted, however, that the phrase was capable of misinterpretation, stating, "I'm not saying that's what [the phrase "you know what time it is"] means. That's how I meant it when I said it." Because there was substantial evidence to support each essential element of the crime charged, the trial court did not err in denying defendant's motion to dismiss the charge. We therefore overrule this assignment of error.

[5] By his final assignment of error, defendant contends that the trial court erred in failing to instruct the jury on the element of felonious intent. "A defendant is not guilty of robbery if he forcibly takes personal property from the actual possession of another under a bona fide claim of right or title to the property, or for the personal protection and safety of defendant and others, or as a frolic, prank or practical joke, or under color of official authority." *State v. Spratt*, 265 N.C. 524, 526-27, 144 S.E.2d 569, 571 (1965). Defendant asserts that he presented evidence tending to show that, in pointing the handgun at the victim, he was acting under a bona fide claim of right to the necklace worn by Shareef. Defendant therefore argues that the trial court was required to give a special instruction on the element of felonious intent.

A taking with "felonious intent" is an essential element of the offense of armed robbery, of attempt to commit armed robbery, and of common law robbery, and it is prejudicial error for the court to

charge that defendant may be convicted of such offenses where the taking was without felonious intent. *See State v. Chase,* 231 N.C. 589, 590-91, 58 S.E.2d 364, 365 (1950). "The comprehensiveness and [specificity] of the definition and explanation of 'felonious intent' required in a charge depends on the facts in the particular case." *Spratt,* 265 N.C. at 526, 144 S.E.2d at 571. Some explanation must be given in every case. *See State v. Lawrence,* 262 N.C. 162, 168, 136 S.E.2d 595, 600 (1964).

In the instant case, the trial court stated that the first element of attempted robbery required that the defendant "intended to rob a person; that is, to forcibly take and carry away personal property from that person, or in his presence, without his consent, knowing that he, the defendant, was not entitled to take it, intending to deprive the person of its use, permanently." The court further instructed the jury that "[a] person is not guilty of attempted armed robbery if he forcibly takes personal property at gunpoint from the actual possession of another under a bona fide claim of right or title to the property." We conclude that the trial court adequately instructed the jury on the meaning of "felonious intent." *See Spratt,* 265 N.C. at 527, 144 S.E.2d at 572. We therefore overrule defendant's final assignment of error.

In conclusion, we hold that defendant received a fair trial, free from prejudicial error.

No error. Judges HUDSON and CAMPBELL concur.